1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

7   UNITED STATES OF AMERICA,                         )
                                                      )
8                        Plaintiff,                   )   Case No.: 2:13-cr-00148-JAD-GWF
                                                      )
9   vs.                                               )   **ORDER**
                                                      )
10  JULIO DE ARMAS DIAZ, et al.,                      )   **Re: Motion to Reconsider**
                                                      )       **Detention Order (Dkt. #44)**
11                                                    )
                         Defendant.                   )
12  _____          )

13          This matter is before the Court on Defendant Julio De Armas Diaz's Motion to Reconsider

14   Detention Order (#44), filed on October 17, 2013.  The Government filed its Response to

15   Defendant's Motion (#45) on November 2, 2013.

16                          **BACKGROUND AND DISCUSSION**

17          On April 9, 2013,  Defendant Julio De Armas Diaz made his initial appearance in court on

18   Criminal Complaint (#3).  The Complaint charged Defendant with conspiracy to commit theft from

19   an interstate shipment and conspiracy to interfere with commerce by robbery.  The latter charge

20   involved an alleged plan by Defendants Diaz and Alexis Torres Simon to rob a pharmaceutical

21   drug delivery van driver at gunpoint, take the driver hostage and steal the contents of the van, and

22   then release the driver and van at another location. *Complaint (#3), pgs. 6-7.*  The Complaint

23   alleged that on the day of the planned robbery, Defendants were arrested in a school parking lot

24   approximately 500 yards from the home of the delivery van driver.  During a consensual search of

25   Defendant Diaz's vehicle, law enforcement officers allegedly found a handgun, black gloves and

26   cable ties. *Id., pg. 7.*

27          The Government moved for pretrial detention on the grounds that Defendant is a risk of

28   non-appearance and a danger to the community.  After conducting the detention hearing, recalled

1   Magistrate Judge Robert McQuaid detained Defendant Diaz on both grounds.  *See Order of*

2   *Detention (#11).*  Defendant was subsequently indicted on April 23, 2013 for conspiracy to

3   interfere with commerce by robbery in violation of 18 U.S.C. § 1951 and possession of a firearm in

4   furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(a), in relation to the alleged

5   plan to rob the delivery van driver on April 8, 2013.

6          Defendant Diaz now moves for reconsideration of the detention order, or to reopen the

7   detention hearing, on the grounds that Defendant's wife, who suffers from schizophrenia, provided

8   incorrect information to the Pretrial Services Officer which conflicted with the information

9   provided by Defendant regarding his residency and children, and contributed to the judge's decision

10  to detain him.  According to the Pretrial Services Report, Mr. Diaz told Pretrial Services that he

11  came to the United States from Cuba in 2004 and had resided in Las Vegas for the past nine years.

12  (Defendant is a Cuban citizen and lawful permanent of the United States.)  He stated that he resided

13  in an apartment with his wife, Adala Zarate.  Defendant also stated that he and Ms. Zarate have

14  been married for 27 years and their relationship has produced three children, ages 34, 28 and 17.

15  Mr. Diaz stated that his children reside in Cuba and he maintains monthly telephone contact with

16  them.

17         The Pretrial Services Officer spoke to Ms. Zarate, who confirmed Defendant's date of birth

18  and time in the community.  Ms. Zarate stated, however, that she and Defendant have been

19  separated for two years and he did not live with her at the subject address.  She also "reported she

20  has not seen him for the past six days and she is not aware of his current address or his ability to

21  return to the residence if released.  She further advised that she was not sure if the defendant may

22  return to her residence as she believes the defendant is currently living with a girlfriend."  Ms.

23  Zarate further stated that she and Mr. Diaz have no children together, but that Defendant does have

24  three children, two of whom reside in Cuba and the third who resides somewhere in the United

25  States.  Ms. Zarate also told the Pretrial Services Officer that she "'absolutely' does not believe the

26  defendant is an appearance risk."  She stated that she did not believe Defendant was a danger to the

27  community because he is hard worker and good father.

28  . . .

1    Defendant argues that the information provided by his wife regarding their residency and

2    the children was incorrect and apparently resulted from her mental impairments.  Defendant

3    indicates that his wife will verify that they have resided together for the past five years, and

4    although Mr. Diaz's children are not Ms. Zarate's biological children, they raised them together.  (It

5    does not appear from Defendant's motion that any of his children resided with him or in Las Vegas

6    at the time of his arrest.)  Defendant also argues that a 2012 charge against him for battery/domestic

7    violence was dismissed because there was no evidence he committed the crime.  Additionally, he

8    asserts that a 2012 failure to appear charge on a traffic citation does not support a finding of a risk

9    of nonappearance because Defendant knew that the charge was being dismissed and did not believe

10   it was necessary for him to appear in court on the charge.

11    The Bail Reform Act, 18 U.S.C. § 3142(f)(2), provides that the detention hearing may be

12   reopened "at any time before trial if the judicial officer finds that information exists that was not

13   known to the movant at the time of the hearing and that has a material bearing on the issue whether

14   there are conditions of release that will reasonably assure the appearance of such person as required

15   and the safety of any other person and the community."  Courts have interpreted this provision

16   strictly, holding that a detention hearing should not be reopened if the information was available at

17   the time of the initial hearing.  *United States v. Castro-Inzunza*, 2012 WL 1952652, *3 (D.Or.

18   2012), citing *United States v. Ward*, 63 F.Supp.2d 1203, 1206-07 (C.D.Cal. 1999); *United States v.*

19   *Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); and *United States v. Hare*, 873 F.2d 796 (5th Cir.

20   1989).

21    Defendant has not shown that he was unable to inform the Court at the time of the April 9,

22   2013 detention hearing that his wife suffers from schizophrenia or was mentally unstable so that the

23   Court could have considered that information in assessing both Defendant's marital status and

24   residency.  Likewise, Defendant has not shown that he was unable to show the Court at the time of

25   his detention hearing that the battery/domestic violence charge, as to which the Pretrial Services

26   Report indicated "no disposition listed" had, in fact, been dismissed.  Nor has he demonstrated why

27   he was unable to explain his failure to appear on the traffic citation at the detention hearing.

28   Although a detention hearing may be reopened at any time before trial, it is also noteworthy that

1   Defendant waited over six months after the detention hearing to raise these issues.  As the

2   Government also notes,  Defendant did not notify the Court of any request or intention to seek

3   reopening of the detention hearing at his May 2, 2013 arraignment on the indictment.

4           18 U.S.C. §3142(g) specifies the various factors that must be considered in determining

5   whether there are conditions of release that will reasonably assure the appearance of the person and

6   the safety of the community.  These factors are (1) the nature and seriousness of the offense

7   charged; (2) the weight of the evidence against the defendant; (3) the defendant's character,

8   physical and mental condition, family and community ties, past conduct, history relating to drug

9   and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any

10  person or the community that would be posed by the defendant's release.  In *United States v.*

11  *Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985), the court stated that the weight of the evidence is

12  the least important of the various factors.  The court further stated that although the statute permits

13  the court to consider the nature of the offense and the evidence of guilt, the statute neither requires

14  nor permits a pretrial determination that the person is guilty.  These factors may be considered only

15  in terms of the likelihood that the person will fail to appear or will pose a danger to any person or

16  the community.

17          Defendant Diaz does not have a significant prior criminal history.  The conspiracy to

18  commit armed robbery charge in this case, however, gives rise to a rebuttable presumption that

19  Defendant poses a substantial risk of non-appearance and danger to the community.  The Court

20  finds that Defendant has failed to provide sufficient grounds to reopen the detention hearing.

21  Accordingly,

22          **IT IS HEREBY ORDERED** that on Defendant Julio De Armas Diaz's Motion to

23  Reconsider Detention Order (#44) is **denied**.

24          DATED this 8th day of November, 2013.

25

26                                          _____
                                            GEORGE FOLEY, JR.
27                                          United States Magistrate Judge

28