UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Julio de Armas Diaz, Alexis Torres Simon,<br>Alexander Del Valle-Garcia,<br><br>    Defendants. | Case No.: 2:13-cr-00148-JAD-GWF<br><br>**Omnibus Order re Various Motions in Limine**<br>  **[## 92, 96, 99, 112, 113, 118, 122, and 123]** |

    Alexander Del Valle-Garcia, Julio De Armas Diaz, and Alex Torres Simon are jointly charged with various conspiracy and theft-related offenses.[1]  Their joint trial is scheduled to begin on April 28, 2014.

    In anticipation of trial, the parties have filed several motions seeking various evidentiary rulings.  Although the Federal Rules of Evidence do not explicitly authorize motions in limine, the trial courts' general authority to manage trials permits trial judges to rule on evidentiary issues before the start of trial.[2]  Pretrial consideration of evidentiary issues serves to avoid the futile attempt of "unring[ing] the bell" when jurors have seen or heard inadmissible evidence, even when stricken from the record.[3]  Motions in limine may also save expensive trial time because ruling on

---

[1] Doc. 77.

[2] *See Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984).

[3] *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003) (quotations and citations omitted).

evidentiary disputes in advance minimizes side-bar conferences and other disruptions at trial, and potentially obviates the need to call certain witnesses.[4]

Of course, these policy considerations must be weighed against the loss of the court's ability to consider evidence in the context of the trial when the court is "better situated . . . to assess the value and utility of evidence."[5]  Limine rulings are provisional; they are "not binding on the trial judge [who] may always change [her] mind during the course of a trial."[6]  "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial.  Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded."[7]

With these principles in mind, the Court addresses each of the currently ripe motions in limine in turn.

**I.    Motion Regarding Admissibility of English Translation Transcripts and Countermotion to Preclude Source's Statements (Docs. 92, 112)**

The Government moves for the pretrial admission of the English-language translations of five Spanish-language recordings of conversations between a confidential human source and Defendants Julio de Armas Diaz and Alexis Torres Simon.[8]  Defendant Julio De Armas Diaz opposes the motion on the basis that the conversations transpired in a Cuban dialect, and the court-certified translator who performed these translations lacks sufficient familiarity with this dialect to ensure the accuracy

---

[4] *See United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

[5] *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("A better practice is to deal with questions of admissibility of evidence as they arise.").

[6] *Ohler v. United States,* 529 U.S. 753, 758 n. 3 (2000); *accord Luce,* 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

[7] *Tracey v. Am. Family Mut. Ins. Co.*, 2010 WL 3724896, at *2 (D. Nev. Sept. 17, 2010) (quoting *Ind. Ins. Co. v. Gen. Elec. Co.,* 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)).

[8] Doc. 92.

of these translations.[9]  Defendant identifies a number of "critical discrepanc[ies]" between the government's translation and defense counsel's initial review of the recordings themselves and asks for an opportunity to present a competing translation.[10]  He also questions whether a proper chain of custody for the recordings was maintained.[11]  Finally, Defendant countermoves to exclude the Source's out-of-court statements as hearsay, irrelevant, and rife with other unindicted crimes, wrongs, or acts independently excludable under FRE 404(b).[12]  By its amended reply,[13] the Government acknowledges that Diaz should be permitted to present his own translations to the jury to the extent he disputes the accuracy of the Government's.[14]

The Ninth Circuit established the proper procedure for introducing foreign-language recordings in *United States v. Franco*.[15]  Both sides should have the opportunity to produce competing transcripts to the jury and argue about the meaning of the conversations.  Whether a transcript is an accurate translation, whole or in part, is for the jury to decide considering the knowledge, training, and experience of the translator, the audibility of the recordings, and the reasonableness of the translation in light of the circumstances and other evidence.[16]

The Government concedes that its request essentially presumes that the defendants do not

---

[9] Doc. 112.

[10] *Id*. at 3.  Defense counsel represents that she is a "native Spanish speaker."  Doc. 112 at 3 n.3.

[11] *Id*. at 4-5.

[12] *Id*. at 5-6.

[13] The Court considers only the Amended Reply, Doc. 132, not the original, abandoned version.  Doc. 128.

[14] Doc. 132.

[15] 136 F.3d 622, 626 (9th Cir. 1998).

[16] *See United States v. Abonce-Barrera*, 257 F.3d 959, 963-64 (9th Cir. 2001); *see also United States v. Rrapi*, 175 F.3d 742, 747 (9th Cir. 2002).

1  dispute the accuracy of the translations.[17] And the Government acknowledges that the defendants
2  should have the opportunity to offer their own translations in the event of a dispute.[18] Defendant
3  Diaz's request for an opportunity to have an independent translator listen to the recordings and
4  prepare a competing translation transcript (to the extent there is a true discrepancy) is granted.  The
5  Court reserves all other rulings with respect tot he admissibility of these recordings for a later date
6  when (1) the parties have determined whether there is any true dispute as to the accuracy of the
7  Government's translations, (2) the chain of custody evidence has been established and a proper
8  foundation for the recordings and transcripts has been laid; and (3) the Court has greater context in
9  which to evaluate the admissibility of the source's statements.

Accordingly, the Government's Motion in Limine Regarding the Admissibility of English-Translation Transcripts (Doc. 92) is DENIED without prejudice.  Defendant De Armas Diaz's counter-request for the opportunity to have the conversations translated and transcribed by an independent translation is GRANTED, but his Motion in Limine to Exclude the Confidential Human Source's Statements (Doc. 112) is DENIED as premature and without prejudice.

**II.	Motion to Exclude Cellular Tower "Ping" Evidence and Joinder Therein (Docs. 96, 99)**

Defendant De Armas Diaz moves to preclude the admission of cellular tower "ping" evidence to establish his location in the general vicinity of a theft at the Smith's on N. Rainbow Avenue on November 14, 2012.[19]  He disputes the "methodology" of the "ping" technology for accurately determining a cell phone's location and suggests that the premise of the technology—that a defendant's location can be determined based on a ping from a single cellular tower—is

---

[17] Doc. 92 at 2.

[18] *Id*.

[19] Doc. 96.

unreliable.[20]   He requests a *Daubert* hearing before trial.[21]   The Government responds that no *Daubert* hearing is necessary because the reliability of this methodology "cannot reasonably be disputed."[22]   Defendant Del Valle Garcia moves to join in this motion and offers no additional substance in its support.[23]

Courts recently considering similar *Daubert* challenges to cellular tower ping evidence have overwhelmingly found this methodology reliable.[24]   It appears that the crux of Defendant's argument against the admission of this evidence is lifted verbatim from the 2012 Northern District of Illinois decision, *United States v. Evans*.[25]   But *Evans* is distinguishable because the methodology it rejected was a "granulation theory" and there is no indication this theory is being espoused in the instant case.[26]   Thus, to the extent that Defendants' lone objection to this evidence is the suggestion (based on a law journal article cited by the *Evans* court) that the methodology is unreliable, this contention is rejected, and the Court declines the request for a *Daubert* hearing on this lone point of challenge.[27]

---

[20] *Id*.

[21] *Id*. at 5; Doc. 115 at 3.

[22] Doc. 111 at 3.

[23] Doc 99.

[24] *See U.S. v. Jones*, 918 F. Supp. 2d 1, 5 (D.D.C. 2013) (collecting cases); *United States v. Reynolds*, 2013 WL 2480684 *5 (E.D. Mich. June 10, 2013) (collecting cases); *U.S. v. Machado-Erazo*, 950 F. Supp. 2d 49, 54-57 (2013) (collecting cases); *United States v. Eady*, 2013 WL 4680527 *4 (D.S.C. Aug. 30, 2013) (collecting cases).

[25] *Compare United States v. Evans*, 892 F. Supp.2d 949, 953 (N.D. Ill. 2012), *with* Doc. 96 at 3.

[26] *See Machado-Erazo*, 950 F. Supp.2d at 57 (citing *Evans*, 892 F. Supp.2d at 952); *see also United States v. Davis*, 2013 WL 2156659 *6 (S.D. Fla. May 17, 2013); *Jones*, 918 F. Supp. 2d at 6.

[27] *See, e.g.*, *Reynolds*, 2013 WL 2480684 *3 (E.D. Mich. June 10, 2013) (declining to hold *Daubert* hearing on same challenge); *Jones*, 918 F. Supp. 2d at 7 (denying request for *Daubert* hearing because "The use of cell phone records to locate a phone has been widely accepted in both federal and state courts across the country," and "the science is well understood").

However, that does not mean that the evidence will necessarily be admitted at trial. The Government still must establish the admissibility of this evidence before the Court can exercise its gatekeeping discretion. The record is too undeveloped at this point for the Court to perform any meaningful *Daubert* analysis. It remains unclear how this evidence will be presented: Defendant's motion states merely that "discovery purportedly suggests" such evidence will be offered,[28] no expert through whom this evidence will be introduced has been identified in the briefing on this motion so this court can consider expert qualifications, and no context for this evidence has been established. As neither party has provided the Court with the information it needs to do anything more than answer the narrow methodology question, the Court reserves any further determination on the admissibility of this "ping" evidence for a later date when the issues have been properly developed. The Court grants Defendant Del Valle Garcia's request to join in this motion (Doc. 99) but denies the Motion in Limine to Preclude Admission of Cellular Tower "ping" evidence as framed. Doc. 96.

### III.   Motion to Preclude Use of Certain Terms at Trial (Doc. 113)

Defendant Del Valle Garcia moves for an order barring any reference to the defendants' activities as "organized crime," an "organized theft group," or a "crew," "ring," or "operation," or "any other term suggestive of an illegal enterprise or organization."[29] He argues that because this is not a RICO case but rather a simple conspiracy case, these references would be "irrelevant, inflammatory, and evocative of crimes not charged here," and they should be excluded under FRE 403.[30] The Government argues that Defendant Garcia offers no authority for the exclusion of these terms, that they are neither inflammatory nor misleading, and "[w]here the case involves organized

---

[28] *See* Doc. 96 at 2.

[29] Doc. 113 at 2-3.

[30] *Id.* at 2.

6

crime, it is not error to refer to it as such."[31]

Rule 403 authorizes trial courts to exclude even relevant evidence when its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[32] "The Government is required to establish how the evidence is relevant to one or more issues in the case: 'it must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence.'"[33] When assessing whether the use of particular language at trial is improper, the Court looks beyond the technical accuracy of a phrase and considers such factors as the "threat of unfair prejudice, frequency of use, and alternative means of description."[34] As the First Circuit Court of Appeals explained in *United States v. Felton*, "It is hard to lay down a general rule as to epithet and rhetoric because the considerations are matters of degree. . . . Such judgments turn on particular facts, and much latitude has to be given to the trial judge on the spot to strike the proper balance."[35]

The Court finds that use of the specific term "organized crime" is unduly inflammatory here and should be limited because there are no racketeering charges in this case. However, the remaining terms are relevant to the conspiracy charges and the government's theories, and Defendant has not demonstrated a legitimate basis for their preclusion.

### A.   Organized crime

Black's Law Dictionary defines organized crime as "Widespread criminal activities that are

---

[31] Doc. 130 at 3.

[32] Fed. R. Evid. 403.

[33] *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993) (quoting *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir.1982)).

[34] *United States v. Felton,* 417 F.3d 97, 103 (1st Cir. 2005).

[35] *Id.*

coordinated and controlled through a central syndicate."[36]  The term is evocative of racketeering activity, as the RICO laws were added to Title 18 of the United States Code by the Organized Crime Control Act of 1970.[37]  Although "mere reference to organized crime does not establish prejudicial error,"[38] repeated use of the term has "a very real potential of being '"improperly transformed to invoke negative and sinister connotations, and to convey strong prejudicial overtones."'"[39]

It is not clear from the parties' submissions exactly how or why the Government intends to utilize the term "organized crime."  Agent Christensen's September 4, 2012, report (Doc. 113 at 5) recounts that he met with a confidential source who "provided . . . information on two groups operating retain and cargo theft organized crime operations in the Las Vegas, Nevada area. . . ."[40]  There are no racketeering charges in this case, and the Government has not demonstrated any need to utilize the specific term "organized crime" based on the facts of this case.  In light of the obvious stigma attached to the specific term "organized crime," the Court finds that, absent further context and demonstration by the Government of why this term is necessary in this case, the phrase "organized crime" is gratuitously inflammatory and it should not be utilized to refer to the defendants' activities.  The motion is granted in this very limited respect.  Any evidence that references the defendants' activities as "organized crime" shall be redacted to eliminate this specific term before presentation to the jury.  Counsel should also ensure that witnesses are cautioned against using the term "organized crime" to describe the defendants' activities.

---

[36] Black's Law Dictionary 1210 (9th ed. 2009).

[37] *United States v. Turkette*, 452 U.S. 576, 578, 586-591 (1981).

[38] *State v. Conway*, 472 A.2d 588, 608 (N.J. Super. 1984).

[39] *United States v. Dimora*, 843 F. Supp. 2d 799, 848 (N.D. Ohio 2012) (quoting *Mathis v. United States*, 513 A.2d 1344, 1348 (D.C. 1986)).

[40] Doc. 77.

### B. Other terms to describe the defendants' affiliation or activities

The other terms identified by the defendants, however, do not evoke the same problematic references. The defendants are charged with conspiracy to interfere with commerce by robbery and conspiracy to commit theft from interstate shipment. *See* Doc. 77. Thus, descriptions like "new organized Cuban theft crew," "acts of organized retail crime," "organized theft group," and "ring leader"[41] are relevant to the specific charges in this case and the relationships between the defendants as alleged by the Government. As the Ninth Circuit panel expressed in *United States v. Rude* when finding no prejudicial error in terms like "Ponzi scheme," "charlatan," and "scam," "the law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom."[42] Preventing the use of these far more common, more accurately descriptive, and less inflammatory terms at trial would unduly restrict honest testimony and impair the Government's ability to put on proof at trial. The motion to exclude any of these other terms is denied.

## IV. The Government's Motion to Admit Phone and Employment Records without Live Testimony (118, 123)

Finally, the Government asks for a pretrial ruling that phone records and employment personnel records are properly authenticated business records that may be admitted at trial based on Rule 902 certifications, eliminating the need to produce the custodians of these records at trial and present their live testimony.[43] The defendants acknowledge that "[t]he Government has complied

---

[41] Doc. 113 at 5-11.

[42] *Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (quoting *United States v. Baker,* 10 F.3d 1374, 1415 (9th Cir. 1993)).

[43] On March 25, 2014, the United States filed the Government's Motion for the Admissibility of Records Pursuant to Fed. R. Evid. 902. Doc. 118. Later that same day, the government filed an Amended Motion for the Admissibility of these records (Doc. 123), but not before Defendants De Armas Diaz and Simon filed their response (Doc. 120), and Defendant Garcia moved to join in that response. Doc. 122. The amendment was not material; it only added to the list of documents one document for which a custodian's affidavit was attached to the original motion but inadvertently excluded from the list. The Court grants Defendant Del Valle Garcia's

with all authentication requirements for these proposed exhibits and the defense is not requesting the custodian of records to appear as witnesses."[44] But they dispute the relevance of these documents.[45]

Certifications under Rule 902(11) serve as a substitute for live testimony establishing the foundation for authenticating business records.[46] For the court to admit business records without live testimony, the custodian of the records or another "qualified person" must certify that the record "(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (B) was kept in the course of the regularly conducted activity; and (C) was made by the regularly conducted activity as a regular practice."[47] If the proponent of the records satisfies Rule 902(11), the evidence is admitted only conditionally, subject to a relevancy demonstration and any other objections.[48]

As acknowledged by the Defendants' admission that the authenticity of these documents is undisputed and live testimony should not be required, the Government has satisfied Rule 902(11). The authenticity of these records is established by the affidavits of Judi Noriega, Deirdre Berry, Jessica Kittle, and Thomas J. Reich,[49] and their affidavits contain all of the information required by the rule. The Court finds no reason to require live testimony of the custodians of these records in order to admit them at trial.

The Defendants' relevancy objections are another issue. At this point two weeks before trial,

---

joinder in his co-defendants' response to this motion, but, as set forth below, finds the relevancy objections premature and thus overrules them without prejudice at this time. Doc. 122.

[44] Doc. 120 at 2; Doc. 122 at 1-2.

[45] *Id*.

[46] Fed. R. Evid. 902(11); *United States v. Miller*, 830 F.2d 1073, 1077-78 (9th Cir. 1987)).

[47] Fed. R. Evid. 902(11).

[48] *See United States v. Kahre*, 610 F. Supp. 2d 1261, 1266 (D. Nev. 2009).

[49] Doc 118-1.

the Court lacks the context necessary to properly determine the relevancy of these records. Accordingly, Defendants' relevancy objections are overruled as premature and without prejudice to their reassertion in the event that the Government seeks to admit these documents at the time of trial. Accordingly, the Court grants the Government's Amended Motion for the Admissibility of these documents (Doc. 123) on a conditional basis.

**Order**

For all the foregoing reasons, and with good cause appearing, IT IS HEREBY ORDERED THAT:

The Government's Motion in Limine Regarding the Admissibility of English Translation Transcripts **[Doc. 92] is DENIED** as premature and without prejudice;

Defendant Julio De Armas Diaz's Motion in Limine to Preclude Admission of Cellular Tower "Ping" Evidence **[Doc. 96] is DENIED**;

Defendant Alexander Del Valle Garcia's Motion for Joinder in Diaz's Motion in Limine to Preclude Admission of Cellular Tower "Ping" Evidence **[Doc. 99] is GRANTED**;

Defendant Julio De Armas Diaz's Countermotion to Preclude CHS's Statements **[Doc. 112] is DENIED** without prejudice;

Defendant Alexander Del Valle Garcia's Motion in Limine to Preclude the Use of Certain Terms at Trial **[Doc. 113] is GRANTED in part and DENIED in part** as full set forth *supra*;

The Government's Motion and Amended Motion for the Admissibility of Records Pursuant to FRE 902 **[Docs. 118, 123] are conditionally GRANTED** as stated *supra*; and

Defendant Julio De Armas Diaz's Motion for Joinder in Defendant Garcia's response to the Admissibility of Record motion **[Doc. 122] is GRANTED**.

DATED: April 14, 2014.

_____
Jennifer A. Dorsey
United States District Judge