1

2

3

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

4

United States of America,

5                                Plaintiff,

6       vs.

7       Julio de Armas Diaz, Alexis Torres Simon,
        Alexander Del Valle-Garcia,

8                                Defendants.

9

Case No.: 2:13-cr-00148-JAD-GWF

**Order re: Motion for Judgment of Acquittal,
Motion for New Trial, and Motions for Joinder
[Docs. 257, 258, 260, 261, 262, 263]**

10          A jury convicted defendants Julio De Armas Diaz, Alex Torres Simon, and Alexander Del

11     Valle Garcia of various offenses related to the robbery of a Coach warehouse, the heist of several

12     pharmaceutical delivery vans, and an ultimate plan to rob yet another pharmaceutical delivery van

13     and kidnap its driver.  Garcia now moves under Rule 29(c) for acquittal on four of the five counts he

14     was convicted of and asks for a new trial under Rule 33.  Docs. 257, 258.[1]  Diaz and Simon seek to

15     join in those motions.  Docs. 260, 261, 262, 263.  After a thorough review of the evidence and

16     evaluation of the parties' arguments, I find that the evidence does not support the jury's conclusion

17     that the defendants completed the substantial step required to sustain their attempted robbery

18     conviction under Ninth Circuit jurisprudence; consequently, their related conviction on count 3 for

19     possession of a firearm in furtherance of that attempt also must be reversed.  The motions for

20     acquittal and for a new trial are denied in all other respects.

21                                    **Background**

22          Defendants Diaz and Simon carried out a series of thefts of designer purses and

23     pharmaceutical drugs between October 2012 and April 2013.  Simon then formulated a plan to rob a

24     third pharmaceutical delivery van and kidnap its driver, and he recruited Yordani Corona Del Toro,

25

26          [1] Garcia originally submitted his Rule 29 motion at Doc. 257, and thereafter submitted a notice
       of corrected image, docketed at Doc. 259.  The Court refers to the pinpoint citations in Doc. 259 as they
       reflect Garcia's actual Rule 29 argument, but actually disposes of both Docs. 257 and 259 by this order.

1  the government's confidential human source (who recorded conversations with Simon and Diaz),

2  along with Diaz and Garcia to join him in the heist planned for the early morning of April 8, 2013.

3      In preparation for the heist, on April 7, 2013, Simon and Diaz explained their plan to Del

4  Toro while the three men cased the pharmaceutical van driver's neighborhood.  Simon explained

5  that he and Diaz would park in an elementary school parking lot just blocks from the driver's house;

6  Del Toro would be picked up by a then-undisclosed man early in the morning and the four would

7  meet up in the school parking lot.  Together they would wait for the driver to make a regular but

8  unauthorized morning stop at home for a breakfast break, where they would apprehend him.  The

9  van would then be driven to a warehouse and unloaded, and the driver would eventually be released.

10  During the FBI-recorded car ride conversation, Simon mentioned that he would be bringing a gun to

11  the robbery scene to facilitate the kidnaping.

12      Thereafter, Simon and Del Toro had additional phone conversations, which Del Toro also

13  caused to be recorded and the FBI translated.  In these phone calls, Simon gave Del Toro Garcia's

14  phone number and explained how Del Toro was to meet Garcia, his ride to the heist.  At trial,

15  transcripts of the April 7, 2013, car ride conversation and the log of phone calls between Simon and

16  Del Toro were introduced into evidence along with the log of calls between Simon and Garcia.

17  Although defendants raised several evidentiary challenges to the Spanish-to-English translations of

18  statements during the car ride conversation,[2] they did not contest the admissibility of the transcripts

19  as a general matter.  The court gave the jury several limiting instructions, including the instruction

20  that evidence from the car ride conversation could not be used to establish Garcia's participation in

21  the conspiracy.

22      The evidence showed that on the morning of April 8, 2013, at the previously planned hour,

23  Diaz and Simon drove together to the designated school parking lot; Garcia and Del Toro arrived

24

25      [2] For example, the FBI's translator testified that "timbre" in Cuban Spanish could refer to either
    "doorbell" or "gun," although the translator testified that "doorbell" made no sense in the context of the
    conversation.

26

together in a separate vehicle.  As the men sat in the two cars, talking to each other through opened

windows, federal agents swooped in and arrested them.  A consent search of Simon's and Garcia's

cars revealed a gun, a roll of duct tape, and three pairs of gloves.  Garcia, Diaz, and Simon were

jointly charged in a 10-count indictment.[3]

After a 10-day trial, the jury returned a verdict of guilty on all counts: Garcia was found

guilty of conspiracy to interfere with commerce by robbery (count 1), attempted interference with

commerce by robbery (count 2), possession of a firearm in furtherance of a crime of violence (count

3), making a false statement to law enforcement (count 4), and conspiracy to commit theft from an

interstate shipment (count 7); Diaz was found guilty of the same offenses[4] plus three additional

counts of theft from interstate shipment (counts 8, 9, and 10); and Simon was found guilty of counts

1-3, 7-10, plus one additional count of being a felon in possession of a firearm (count 6).[5]  Garcia

timely moved for a judgment of acquittal under Rule 29(c), making specific arguments for acquittal

of counts 1, 2, 3, and 7, but not his false-statement conviction as alleged in count 4, Doc. 259; and

he seeks a new trial under Rule 33, incorporating the arguments made in his Rule 29(c) motion but

not relating any of his arguments to any specific count.  Doc. 258.  Simon and Garcia have moved to

join in both motions, Docs. 260-263, but did not file their own.

**Discussion**

**A.     Diaz and Simon's Motions for Joinder (Docs. 260, 261, 262, 263)**

Both Simon and Diaz move to join in Garcia's motions.  Docs. 260, 261, 262, 263.  The

government has not opposed the joinder requests.  However, since neither Simon nor Diaz made any

arguments separate from those Garcia urges or otherwise distinguished the scope of their own

---

[3] By trial, the Second Superseding Indictment controlled.  Doc. 77.

[4] Diaz's false-statement charge was alleged in count 5.

[5] Doc. 239; 254.

joinders, their challenge is coextensive with Garcia's and does not extend to the counts on which

they were separately convicted.  Good cause appearing, the motions for joinder are granted.

**B.      Rule 29(c) Judgment of Acquittal (Doc. 257)**

Federal Rule of Criminal Procedure 29(c) permits a criminal defendant to move for a

judgment of acquittal after the jury has been discharged.[6]  "A motion for Judgment of Acquittal is

reviewed on a sufficiency-of-the-evidence standard."[7]  "The relevant question is whether, after

viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt."[8]  This standard requires

the court to determine that "mere speculation," and not "reasonable inference" supported the

government's case-in-chief [9] and does not permit the court to "assume the function of the jury to

make credibility determinations."[10]  Garcia moves for a judgment of acquittal on counts 1, 2, 3, and

7.  Doc. 259.

### *1.      Count 2—Attempted Interference with Commerce by Robbery*

All three defendants were convicted of attempted interference with commerce by robbery for

the planned-but-not-completed heist of the final delivery van on the morning of April 8, 2013.  An

attempt conviction requires both culpable intent and "conduct constituting a substantial step toward

commission of the crime that is in pursuit of that intent."[11]  Defendants' challenge focuses on the

substantial-step prong: they argue that Ninth Circuit authority holds that their acts—convening at the

---

[6] Fed. R. Crim. Proc. 29(c)(1)-(2).

[7] *United States v. Stoddard*, 150 F.3d 1140, 1144 (9th Cir. 1988).

[8] *United States v. Bahena-Cardenas*, 70 F.3d 1071, 1072-73 (9th Cir. 1995) (citation omitted); *see also United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010).

[9] *United States v. Shelter*, 665 F.3d 1150, 1163-64 (9th Cir. 2011) (quotation omitted).

[10] *United States v, Ramos-Atondo*, 732 F.3d 1113, 1121 (9th Cir. 2013).

[11] *United States v. Buffington*, 815 F.2d 1292, 1301 (9th Cir. 1987).

4

preset meeting location and time with gloves, duct tape, and a gun in the car—fall short of satisfying

the substantial step requirement necessary to sustain their conviction for the attempted robbery of

the pharmaceutical delivery van parked blocks away.  After an exhaustive review of the Ninth

Circuit's substantial-step jurisprudence and the evidence in this case, I agree.

A hard-and-fast rule for determining what conduct constitutes a substantial step has defied

formulation.[12]  The Ninth Circuit has repeatedly recognized that mere preparation to commit a crime

is not a substantial step,[13] nor is it enough that the defendant intended to commit the crime.[14]  "A

suspect crosses the line separating preparation from attempt when his actions 'unequivocally

demonstrate that the crime will take place unless interrupted by independent circumstances.'"[15]

Whether the defendant has gone far enough towards the commission of the offense depends on a

careful analysis of the facts of each case juxtaposed against the circuit's historic treatment of attempt

conduct.[16]  As the Ninth Circuit panel in *U.S. v. Harper*[17] explained:

> It is admittedly difficult to draw the line between mere preparation to commit an
> offense, which does not constitute an attempt, and the taking of a substantial step
> toward commission of the crime, which does.  Various theories have been
> propounded for determining when the activities of one who intends to commit a
> crime ripen into an attempt, and they yield varying results in a case like this.  We
> must draw our guidance from our own precedent . . . .

---

[12] Kevin F. O'Malley et al., Fed. Jury Prac. & Instr. 21:04 (6th ed.).

[13] *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1102 (9th Cir. 2011) (citing *Buffington*, 815 F.2d at 1301, *United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 364 (2010), *Walters v. Maass*, 45 F.3d 1355, 1359 (9th Cir. 1995), and Ninth Circuit Model Criminal Instruction 5.3 (2010)).

[14] *Id*.

[15] *Id*. (quoting *United States v. Goetzke*, 494 F.3d 1231, 1237 (9th Cir. 2007) (per curiam) (quoting *United States v. Nelson*, 66 F.3d 1036, 1042 (9th Cir. 1995) (internal quotation marks omitted), and citing *United States v. Saavedra–Velazquez*, 578 F.3d 1103, 1107 (9th Cir. 2009)).

[16] *Id*.

[17] *U.S. v. Harper,* 33 F.3d 1143, 1147 (1994) (internal citations omitted).

1    Careful analysis of that precedent leads me to conclude that Garcia, Diaz, and Simon had not

2    taken the substantial step necessary for attempted interference with commerce by robbery before

3    they were apprehended by law enforcement.  As the Ninth Circuit panel explained in *Hernandez-*

4    *Cruz v. Holder*, in this circuit:

5

6    > Our cases illustrate that it is not enough to say that the suspect took certain *necessary*
       steps, even when intent is unquestionably criminal.  In *United States v. Still,* 850 F.2d
       607 (9th Cir. 1988), for example, we held that the defendant had made no substantial
7      step toward the commission of bank robbery when he was arrested after a witness
       saw him putting on a long blond wig while sitting in a van, with its motor running,
8      approximately 200 feet from the bank.  The defendant's intent was crystal clear, as he
       stated to police upon his arrest: "You did a good job. You caught me five minutes
9      before I was going to rob a bank.  That's what I was putting the wig on for."  *Still*
       nevertheless held that these facts did not establish a substantial step, explaining that
10     they did not establish a sufficiently clear *external* manifestation of the suspect's
       specific intent to rob a particular bank in a particular manner in the immediate
11     future.[18]

12    That the Ninth Circuit draws the line for attempt virtually adjacent to the crime itself is also

13    borne out by *United States v. Buffington*, *United States v. Snell*, and *United States v. Harper*.  In

14    *Buffington*, an informant told law enforcement that three men planned to rob a bank in a certain

15    shopping center and that one of the men would be dressed as a woman.[19]  As foretold, Buffington

16    and his two male co-defendants—one dressed as a woman—cased the bank, parked 150 feet from it,

17    exited the car, and stood facing the bank.[20]  "By sheer coincidence, a major power outage then

18    occurred," and while a bank teller was locking the bank door, she noticed one of the men wrapping a

19    scarf over his face and even mentioned to a security guard that the man would be unable to rob the

20    bank because the door was locked.[21]  As the men drove away, they passed an officer who recognized

21

22    _____

23    [18]   *Hernandez-Cruz*, 651 F.3d at 1102-03.

      [19]   *Buffington*, 815 F.2d at 1295.

24    [20]   *Id.*

25    [21]   *Id.*

26                                            6

one of them from a photograph, stopped the vehicle, and ordered them out of the car at gunpoint; a search of the men and their car revealed two guns.[22]

A jury convicted them of attempted armed bank robbery, but the Ninth Circuit found that their "conduct fell short of constituting a substantial step toward the commission of a robbery."[23] The panel reasoned, "we could well believe that the defendants intended to do what the informant claimed they had planned; but their actual conduct did not cross the boundary between preparation and attempt.  [They] were afterwards found to be armed and may have appeared to be reconnoitering [the bank], but none made any move toward the bank."[24]  "The conduct . . . [wa]s entirely tentative and unfocused":

> Not only did [they] not take a single step toward the bank, they displayed no weapons and no indication that they were about to make an entry.  Standing alone, their conduct did not constitute that requisite "appreciable fragment" of a bank robbery, nor a step toward commission of the crime of such substantiality that, unless frustrated, the crime would have occurred.[25]

The Ninth Circuit relied on *Buffington* and *Still* to reverse another attempted bank robbery conviction in *United States v. Harper*.  Officers found Harper and another codefendant sitting in a rented car in the parking lot of a bank.[26]  They had duct tape, a stun gun, gloves, and ammunition in the car, and they had stashed loaded handguns under a nearby bush while they waited for the bill trap they had created in the bank's ATM to lure service technicians to it so they could rob it when opened for repairs.[27]  Finding the requisite substantial step missing, the court reasoned, "[t]he

---

[22] *Id.*

[23] *Id.* at 1302.

[24] *Id.* at 1303.

[25] *Id.*

[26] *Harper*, 33 F.3d at 1145.

[27] *Id.*

7

1   robbery was in the future and, like the defendants in *Buffington*, the defendants never made a move

2   toward the victims or the Bank," and "[a]s in *Still*, . . . the crime was too inchoate to constitute an

3   attempt."[28]

4         Garcia, Diaz, and Simon took no greater step towards their planned victim than the

5   defendants in *Buffington*, *Still*, and *Harper*.  Although a post-arrest search revealed the same type of

6   items found with the *Harper* defendants, Garcia, Diaz, and Simon were arrested while stopped in a

7   school parking lot more than a block from the target's home; they were still seated in their vehicles,

8   and their robbery implements (gloves, duct tape, and the gun) were stowed.  In the words of the

9   *Buffington* court, even if "we could well believe that the defendants intended to do what the

10   informant claimed they had planned . . . their actual conduct did not cross the boundary between

11   preparation and attempt."[29]

12         *United States v. Snell*[30] demonstrates just how close to completion a defendant must get to

13   cross that boundary.  Snell and two co-conspirators planned to kidnap a bank manager and his wife

14   from their home by posing as police officers, hold the wife hostage, accompany the manager to the

15   bank, obtain $150,0000, and then kill the manager.[31]  They cased the bank, followed the manager

16   home, and learned his routine; and they assembled false law enforcement identification, gloves,

17   guns, mace, ropes, and tape.[32]  Snell and one co-defendant knocked on the door to the home "and

18   identified themselves as policemen, but their plan to force an entry and kidnap the wife was

19

20

21   ───────────────

           [28] *Id*. at 1147-48.

22
           [29] *Buffington*, 815 F.2d at 1303.
23
           [30] *United States v. Snell*, 627 F.2d 186 (1980)
24
           [31] *Id.* at 187.
25
           [32] *Id*.
26

frustrated by a Great Dane that accompanied her to the door."[33]  One of the co-conspirators later revealed the plan to police.[34]  The court found a substantial step towards both the attempted kidnaping and attempted robbery because "[g]iven the nature of his scheme that made the kidnaping an integral part of the plan to rob the bank, Snell's acts taken in furtherance of the kidnaping equally evidenced his intent to rob the bank.  In this respect, [his] entry into the home of the bank manager's wife is factually precedent but so far as the total scheme is concerned is analytically little different than entry into the bank itself."[35]

Considering the similarities in the instant plan and that in *Snell*, had Garcia, Diaz, and Simon approached the pharmaceutical van driver's front door, they may well have crossed that boundary between preparation and attempt such that they should stand convicted of attempted interference with commerce by robbery.  But they were at least a block—and an unknown length of time—away from that location when apprehended with their robbery implements stowed and the gun yet unloaded.

Although I denied a Rule 29(a) motion during trial in reliance on Seventh Circuit cases offered by the government, *see* Doc. 264 at 4, after a more extensive comparison of Seventh and Ninth Circuit treatment of the substantial step requirement, it appears that the Seventh Circuit draws the boundary line closer to preparation than the Ninth Circuit permits.  The Seventh Circuit holds that "crossing from mere preparation to a substantial step does not require police to wait until the day of the planned crime to intervene with an arrest;" a finalized plan and possession of all necessary implements is enough.[36]  This approach is inconsistent with the Ninth Circuit's

---

[33] *Id.*

[34] *Id.*

[35] *Id.* at 188.

[36]  *United States v. Muratovic*, 719 F.3d 809, 816-18 (7th Cir. 2013).

9

recognition in *Hernandez-Cruz* that:

> if mere preparatory behavior is held to be a substantial step supporting a conviction for attempt, the would-be-criminal has far less incentive to change his mind at the last minute, and so might be mer likely to carry through with his plan.  One of criminal law's most "basic premises" . . . is the notion that "bad thoughts alone cannot constitute a crime." . . . The criminal law of attempt does not assume the worst of people.[37]

Having now thoroughly considered the Ninth Circuit's substantial-step jurisprudence, I find that the evidence did not support defendants' conviction for attempted interference with commerce by robbery under the Ninth Circuit's substantial-step jurisprudence.  All defendants' requests for judgment of acquittal on count 2 is granted; their convictions for attempted interference with commerce by robbery are reversed and set aside.

### 2.   Count 3—Possession of a Firearm in Furtherance of a Crime of Violence

Count 3 of the Second Superseding Indictment charges Garcia, Diaz, and Simon with possession of a firearm in furtherance of the attempted robbery, and the jury found each of them guilty of this offense.  Garcia argues that because the government "married" its Section 924(c) charge to the attempted robbery charge in count 2, if the defendants are acquitted of the attempt conviction, count 3 must fall "of its own weight."  Doc. 259 at 12.  I agree.  Because the Section 924(c) conviction is predicated on the attempted robbery offense, which the court has found was not sufficiently proven under Ninth Circuit law, the defendants' conviction on count 3 also must be reversed.[38]  Defendants' convictions under count 3 for possession of a firearm in furtherance of the attempted interference with commerce by robbery are reversed and set aside.

### 3.   Counts One and Seven—Conspiracy

The legal infirmities of the attempt conviction do not plague the defendants' conviction for

---

[37] *Hernandez-Cruz*, 651 F.3d at 1103 (quoting Wayne R. LaFave, 2 *Subst. Crim. L.* § 11.4 (2d ed. 2003)).

[38] *See Buffington*, 815 F.2d at 1304.  Having granted the motion on this basis, the court does not reach Garcia's alternative theories for reversal of his conviction on this count.

conspiracy.  No substantial step is required to convict a defendant of conspiracy.[39]  "The essential elements of a conspiracy are (1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime."[40]  "The overt act required as an element need not have as immediate a connection to the intended crime as the 'substantial step' required for an attempt."[41]  An agreement can be inferred from circumstantial evidence; once a conspiracy has been established, "only a slight connection between the defendant and the conspiracy is necessary to convict the defendant of knowing participation" therein.[42]

Garcia contends that there was insufficient evidence that he agreed to and intended to further the object of either of the conspiracies he was convicted of (count one: interference with commerce by robbery, and count 7: conspiracy to commit theft from interstate shipment—both related to the planned April 8th pharmaceutical-van heist).  He notes that he was "never recorded agreeing to anything," and that the circumstances of his involvement—that he gave Del Toro a ride—do not supply adequate circumstantial evidence to sustain his conviction for the final delivery van-related robbery conspiracies.  Doc. 259 at 15.

Garcia's argument ignores other key evidence: that Simon contacted Garcia prior to the scheme and that the two men exchanged a number of phone calls; that Garcia picked up Del Toro on the morning of August 8, 2013, and drove him to where Diaz and Simon were parked even through Garcia and Del Toro had never previously met; that implements of the robbery scheme were found

---

[39] *See United States v. Nelson,* 66 F.3d 1036, 1044 (9th Cir. 1995) (attempt requires proof of substantial step in furtherance of the crime, whereas conspiracy requires proof of an overt act in furtherance of the conspiracy, the latter requiring less of an immediate connection to the crime than the substantial step necessary for attempt).

[40] *Id.* (quoting *United States v. Litteral,* 910 F.2d 547, 550 (9th Cir. 1990) (quotations omitted)).

[41] *Id.* (quoting *Harper,* 33 F.3d at 1148).

[42] *Id.* (citations omitted).

in Garcia's car; and that Del Toro testified that, during their drive to the school parking lot, Garcia expressed his hopefulness that they were going to make a lot of money from the heist.  Although Garcia offered other evidence that the car belonged to someone else, the car's owner testified that the gloves and other potential robbery implements were not in the car at the time the car was loaned to Garcia.  Thus, there was sufficient evidence from which a reasonable jury could convict Garcia of the conspiracy offenses, and Garcia's request for acquittal under Rule 29(c) on counts 1 and 7 is denied.

**C.      Rule 33 Motion for a New Trial (Doc. 258)**

Garcia also moves for a new trial under Federal Rule of Criminal Procedure 33, which permits the court to "vacate any judgment and grant a new trial if the interest of justice so requires."[43]  "If the Court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed.  The court must specify the reasons for that determination."[44] "Rule 29(d) refers only to pending new trial motions made by the defendant," and the district court lacks authority to determine whether a new trial is appropriate absent a motion from the defendant to that effect.[45]  After thoroughly considering Garcia's new-trial arguments, I deny the motion on all bases unconditionally.

### 1.      *Insufficient Evidence*

Garcia rehashes his Rule 29(c) argument that insufficient evidence supports his conviction and invites the court to "play the thirteenth juror in this motion."  Doc. 258 at 9.  I deny the motion on this ground for a number of reasons.  First, the motion for a new trial on counts 2 and 3 is moot

---

[43] Fed. R. Crim. Proc. 33(a).

[44] Fed. R. Crim Proc. 29(d).

[45] *United States v. McGowan*, 668 F.3d 601, 604 (9th Cir. 2012).

12

because I granted the motion for acquittal on those convictions.  In the event the Ninth Circuit finds

that the evidence demonstrates that defendants took a substantial step towards the robbery by the

time of their arrest, then the motion should still be denied on counts 2 and 3 because there was

sufficient evidence to sustain those convictions.  Finally, I find no merit in the Rule 33 motion on

counts 1 and 7.[46]  Although I may now weigh the credibility of the evidence in this motion, when

doing so I find that the evidence in this case and the reasonable inferences from that evidence were

sufficient to convict Garcia and his co-defendants on these counts.  *See supra* at p. 1-3 (identifying

the evidence at trial).

### 2.    *Prosecutorial Misconduct*

Garcia argues that the prosecution violated his right to the presumption of innocence and to

have the government prove guilt beyond a reasonable doubt when the prosecutor argued during

closing argument "that the defendants did not give the jury any reasons why they were gathered in

the parking lot on April 8."  Doc. 258 at 10.  The government characterizes the comment as a "fair

comment on the statements made to agents, in recordings, and counsel's argument rather than their

lack of testimony" and states that the comment went to defendants' failure to provide exculpatory

evidence.  Doc. 264 at 6-7.

"The test to judge impermissible comment upon a defendant's assertion of his Fifth

Amendment right not to testify is whether the language used was manifestly intended or was of such

a character that the jury would naturally and necessarily take it to be a comment on the failure to

testify."[47]  Such comments are impermissible "where such comment is extensive, where an inference

of guilt from silence is stressed to the jury as a basis for conviction, and where the evidence could

---

[46] Garcia does not argue that the evidence was insufficient to sustain his conviction on count 4—making a false statement.  At best, Garcia "adopts and incorporates the authorities and arguments in [his] motion for judgments of acquittal," Doc. 258 at 1, but that motion also does not challenge Garcia's conviction on count 4.  To the extent Garcia desires to challenge his conviction on count 4 for insufficient evidence, the motion is denied as to that count, too.

[47] *United States v. Soulard*, 730 F.2d 1292, 1306 (9th Cir. 1984) (citations omitted).

13

have supported acquittal."[48]  However, "[a] prosecutor may properly comment upon the defendant's failure to present exculpatory evidence, so long as it is not phrased to call attention to the defendant's own failure to testify."[49]  "Comments that call attention to the inadequacies of the accused's defense do not violate the fifth amendment."[50]  Ultimately, "reversal is only required if the comment could have affected the verdict."[51]

I do not find prosecutorial misconduct requiring a new trial.  The government's statements during closing arguments were not phrased to call attention to the defendants' failure to *testify*; at best, they pointed to defendants' failure to provide any exculpatory evidence.  Nor could the jury reasonably believe that the statements were designed to draw attention to the defendants' failure to testify.  But even assuming *arguendo* that the government's statements crossed the Constitutional rubicon by singling out defendants' failure to take the stand, reversal would still not be warranted.  The Ninth Circuit "has been reluctant to reverse where . . . the prosecutorial comment was a single isolated statement, did not stress an inference of guilt from silence as a basis of conviction, and was followed by curative instructions."[52]  In this case, I had already instructed the jury that the burden of proof was on the government, repeated my instruction in the face of one objection, and then reiterated the instruction after the government's rebuttal.  Garcia's motion is denied on this point.

### 3.     *Misjoinder*

---

[48] *United States v. Tarazon*, 989 F.2d 1045, 1052 (9th Cir. 1993).

[49] *Soulard*, 730 F.2d at 1306 (citation omitted).

[50] *United States v. Kessi*, 868 F.2d 1097, 1106 (9th Cir. 1989); *United States v. Castillo*, 866 F.2d 1071, 1083 (9th Cir. 1988).

[51] *Tarazon*, 989 F.2d at 1052.

[52] *Soulard*, 730 F.2d at 1307.  *See also United States v. Mares*, 940 F.2d 455, 461 (9th Cir. 1991) (finding that a series of statements made by the prosecutor could also be found harmless).

1    Garcia re-urges (without restating) his pretrial motion for severance, Doc 75, and baldly

2  states that "[]he disparate amount of the evidence and radically different degrees of culpability in

3  this case could have led the jury to find Mr. Garcia guilty by association."  Doc. 258 at 10.  Federal

4  Rule of Criminal Procedure 8(b) permits defendants to be joined in an indictment where "they are

5  alleged to have participation in the same act or transaction, or in the same series of acts of acts or

6  transactions, constituting an offense or offenses."[53]  There is no question that Garcia, Simon, and

7  Diaz were alleged to have participated in the same act or transaction: the conspiracy to rob the

8  pharmaceutical delivery van on April 8th.

9    Even if initial joinder is proper, Rule 14 allows the court to order separate trials if joinder

10  "appears to prejudice a defendant or the government."[54]  Because some prejudice is inherent in any

11  joinder,[55] "[a] defendant must show clear, manifest or undue prejudice and violation of a substantive

12  right resulting from the failure to sever."[56]  The Ninth Circuit employs a four-part test for severance;

13  it examines: "(1) whether the jury may reasonably be expected to collate and appraise the individual

14  evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited

15  purposes for which certain evidence may be used; (3) whether the nature of the evidence and the

16  legal concepts involved are within the competence of the ordinary juror; and (4) whether [the

17  defendant] could show, with some particularity, a risk that the joint trial would compromise a

18  specific trial right of one of the defendants, or prevent the jury from making a reliable judgment

19  about guilt or innocence."[57]  Thus, the test does not focus on the types of allegations made or the

20

21    [53] Fed. R. Crim. Proc. 8(b).

22    [54] Fed. R. Crim. Proc. 14(a).

23    [55] *United States v. Vaccaro*, 816 F.2d 443, 448-49 (9 th Cir. 1987), *aborgated on other grounds by* 485 U.S. 681 (1988).

24

25    [56] *United States v. Castro*, 887 F.2d 988, 996-97 (citations omitted).

26    [57] *United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004).

15

1    timing of any joint defendant's participation, but rather on the complexity of the evidence and the

2    jury's ability to discern it.

3         In my denials of Garcia's requests for severance made before and during trial, I found

4    severance unwarranted because the evidence would "relate to a series of discrete alleged thefts, from

5    which the final conspiracy offense is entirely separate," and Garcia had not identified any "technical,

6    scientific, complex evidence that would blur the boundaries between co-defendants."  Doc. 183 at 6.

7    Garcia does not endeavor to do so in his instant motion either, and I do not find that the evidence

8    was so disparate or radically different in degree of culpability that the jury merely found Mr. Garcia

9    guilty by association.  The jury could be reasonably expected to have assessed the evidence on a

10   defendant-by-defendant basis; each defendant was separately represented by two attorneys who

11   provided independent cross examination of each witness and separate closing arguments.  The court

12   gave a number of limiting instructions: for instance, the jury was instructed that only certain of the

13   recorded conversations could be considered in determining Garcia's conspiracy culpability.  The

14   offenses were organized discretely by event, making it easy for ordinary jurors to understand the

15   evidence and legal concepts involved.  And Garcia has not identified with any particularity how the

16   joint trial prevented the jury from fairly determining his guilt or innocence.  Accordingly, Garcia's

17   motion for new trial on misjoinder grounds is denied.

18        **4.    *Evidentiary Issues***

19        Garcia also contends that the court committed a number of evidentiary errors: (1) precluding

20   the defense from calling a Clark County Deputy District Attorney to testify about Del Toro's plea

21   negotiations on state-court charges in an effort to impeach FBI Agent Christensen's testimony that

22   he never recommended or sought a specific sentence for Del Toro for his cooperation; (2) preventing

23   full cross examination of Christensen on the FBI's guidelines for dealing with confidential human

24   sources; (3) excluding some of Del Toro's Facebook postings; and (4) unspecified instances in

25   which the court "cut off" certain questions posed by defense counsel as "argumentative."  Doc. 258

26

16

1   at 3-8.  Garcia contends that these cumulative evidentiary errors warrant a new trial.  *Id.* at 2.

2            **a.**      **Exclusion of  District Attorney Schwartzer's testimony**

3         During trial, investigating FBI agent Christensen testified that he had never recommended or

4   sought any specific sentencing benefit for cooperating confidential human source Del Toro in the

5   confidential human source's then-ongoing state court prosecution.  Instead, Christensen

6   testified—during hours of cross examination by three different defense attorneys—that he informed

7   the state prosecutors of Del Toro's help in the federal prosecution but did not demand a specific

8   sentencing result for his cooperation.  At trial, defendants offered a note "memorializing a meeting

9   between [Deputy District Attorney] Schwartzer and [Agent] Christensen," in which Schwartzer

10  wrote that Christensen had asked him to drop the charges.  Doc. 258 at 3.  Defendants sought to call

11  Schwartzer, whom defendants hoped would testify that Christensen in fact asked the state

12  prosecutors to drop the charges against Del Toro.  I excluded Schwartzer's testimony under Rule

13  608(b) and Rule 403.  Garcia argues the DA's testimony should have been admitted under either

14  Rule 607 (impeachment by contradiction) or Rule 613 (prior inconsistent statement).

15        Garcia's argument that the DA's testimony was going to be offered as impeachment

16  evidence and to show a prior inconsistent statement is disingenuous.  It was apparent during trial

17  (and during the numerous motions, oral arguments, and sidebars regarding this and related issues)

18  that defendants' goal was not to impeach Christensen on the minuscule and tangential point of

19  whether he asked the DA for a specific sentence reduction or generally asked for a reduction in Del

20  Toro's sentence, but to distract the jury from the real issues with this sideshow[58] by bringing a

21  parade of state court judges, prosecutors, and defense attorneys to testify about what Agent

22  Christensen did or did not say during Del Toro's state court proceedings.  The intentions of the

23  defense counsel were clear to me, having sat through hours of cross examination about Del Toro's

24

---

25      [58] *See, e.g.*, *United States v. Kincaid Chauncey*, 556 F.3d 923, 933 (9th Cir. 2009), *abrogated on other grounds*, *United States v. Garrido*, 713 F.3d 985, 992-96 (9th Cir. 2013).

26

benefits for cooperation (which were fully laid out for the jury) and Agent Christensen's promises

to, and communications with, Del Toro on this singular point: they wanted to discredit Christensen,

one of the key testimonial witnesses against the defendants in this case.  *See also* Doc. 214 at 4

(defense brief highlighting that the goal of this extrinsic evidence was to show Christensen is "a liar"

and was "untruthful" in his investigation of the case and his reporting of Garcia's statements).  Thus,

whether the District Attorney's note properly reflected a conversation he had with Christensen had

only one real purpose: to attack Christensen's character for truthfulness with extrinsic evidence not

permitted by FRE 608(b).[59]

Regardless, the DA's testimony was also properly excluded under FRE 403.  As the

defendants were permitted wide latitude to cross examine both Del Toro and Christensen on all

issues related to Del Toro's cooperation benefits and the negotiations for those benefits—including

Christensen's communications with prosecutors, defense counsel, and judges in the state court

system—Schwartzer's testimony would have been cumulative, needless, and would have wasted the

jury's time on a truly collateral point.  Thus, the court properly exercised its discretion to exclude

this testimony on the separate basis of FRE 403.

### b. Preventing full cross-examination of Christensen regarding the FBI's confidential human source guidelines

Garcia argues that Simon's counsel was precluded from "fully cross examining Christensen

on the FBI CHS guidelines," claiming that a full examination of the guidelines would have shown

that Christensen "routinely violated these mandatory guidelines, calling into question the credibility

---

[59] Rule 608(b) provides in pertinent part, "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about." I permitted extensive cross examination on these issues; I merely prevented the parade of witnesses from coming across the street to provide extrinsic evidence. Thus, the court did not run afoul of Rule 607 or Rule 613; it allowed the defendants ample opportunity to attack Christensen's credibility—just not with this extrinsic evidence.

18

of the entire investigation."  Doc. 258 at 5.  The court permitted defense counsel to make significant

inquiry into Agent Christensen's familiarity with, and adherence to, the FBI's guidelines for dealing

with confidential human sources, but it stopped the protracted inquiry when it became cumulative

and ventured too far into irrelevant territory.  Defense counsel spent days attacking the credibility of

the government's key witnesses: Agent Christensen and confidential human source Del Toro.

Although the court may not have articulated its analysis of the Rule 403 factors when cutting off this

line of questioning (which essentially consisted of defense counsel reading sentence after sentence

of the FBI's guidelines and asking the agent if he had learned or remembered each provision), the

court had determined by balancing the factors that this inquiry was only resulting in a lengthy

exploration of issues that were—at best—peripherally related to the case and that permitting the

inquiry to proceed was going to result in a waste of time.  Having considered the issue a second

time, I reach the same decision: the line of questioning was properly terminated under FRE 403.

### c.    Excluding Facebook photos of Del Toro

Garcia argues that the court improperly excluded Del Toro's photographic Facebook

postings—many of which displayed gang tattoos—under Rule 403.  Garcia claims that the photos

"would have directly contradicted" Del Toro's testimony on direct that he fled the United States

after the April 8th arrest out of fear, or that his mother—a hotel maid—was his only source of

income, because the photographs depict Del Toro holding a large stack of money and generally

enjoying a partying lifestyle during the time he was a fugitive.  Doc. 258 at 7-8.

Rule 403 allows the court to "exclude relevant evidence if its probative value is substantially

outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

There was no probative value to the Facebook photos of Del Toro.  Although defense counsel

argued that the photos showed Del Toro was lying about his state of mind while on the lam, his state

of mind at that time had little to no relevance to this case.  Thus, any probative value that these

1  photos may have had was outweighed by the danger of confusing the issues, misleading the jury,

2  undue delay, and wasting time.

3        Garcia also fails to note in his motion that all three defendants were permitted extensive

4  cross-examination of Del Toro during which they asked about his finances; the reason for his

5  departure from the United States; what activities he engaged in while abroad in Mexico and Cuba

6  and the circumstances of his return to the United States; and his visible tattoos and his reasons for

7  getting them.  And they confirmed through his testimony that he was posting photos of himself on

8  Facebook that depicted him as happy during that trip.  Thus, even assuming *arguendo* that the court

9  erred by excluding these Facebook postings, the error was harmless because the jury was already

10  provided through cross examination testimony with all the substantive information those photos

11  could have provided.  Garcia's motion for a new trial on this basis is denied.

12              **d.    Cutting off questions as argumentative**

13        Garcia also represents that the court "cut off certain questioning as 'argumentative'" but he

14  has not offered a single instance of this error—and in fact admits he has not actually reviewed the

15  trial transcript to pinpoint the questions in contention.  Doc. 258 at 8.  The court does not have a

16  recollection of cutting off any proper questions as "argumentative" and cannot speculate as to what

17  Garcia had in mind.  Garcia's motion for a new trial is denied on this point.

18        ***5.    Prejudice***

19        Finally, Garcia argues that the "combined issues in play" demonstrate that he would likely be

20  acquitted in a trial free of errors.  Doc. 258 at 10.  I disagree; the convictions in this case could have

21  rested almost entirely on the recorded transcripts between Del Toro, Simon, and Diaz and the

22  evidence of phone calls between Simon and Del Toro—evidence that Garcia does not challenge.

23  While admission of all of defendants' evidence might have struck some additional minor blows to

24  Christensen or Del Toro's credibility, defendants were able to examine both witnesses for days, and

25  the Court's exclusions were designed to prevent defendants from turning their defense into a

26

"sideshow" in which the parties alternatively tore down and rehabilitated Christensen and Del Toro's characters.  This trial, as it proceeded, was not so erroneously prejudicial that a new trial is warranted.

### Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants Simon and Diaz's motions for joinder [**Docs. 260, 261, 262, 263] are GRANTED;**

It is **FURTHER ORDERED** that Defendant Garcia's Rule 29(c) Motion for Judgment of Acquittal [**Doc. 257] is GRANTED** in part and **DENIED** in part:

1.   It is **GRANTED** as to Counts 2 and 3;

2.   It is **DENIED** as to Counts 1 and 7;

3.   **Diaz, Simon, and Garcia's convictions on counts 2 (attempted interference with commerce by robbery) and 3 (possession of a firearm in furtherance of a crime of violence) are reversed and set aside;**

It is **FURTHER ORDERED** that Garcia's Rule 33(a)(2) Motion for a New Trial [**Doc. 258] is DENIED**.

Dated this 4th day of September, 2014.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE

21